UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | | |
|---|---|---|
| Shanna Zareski, individually, as executor and as Personal Representative of the Estate of Michael Zareski, deceased; Dawn Stelling, individually, as executor and as Personal Representative of the Estate of Robert Stelling, deceased; and Joshua Reikes, individually. | § § § § § § § | |
| Plaintiffs; | § § § | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| vs. | § § § § | |
| Champion Aerospace LLC, | § § | |
| Defendant. | § | |

Plaintiffs submit this memorandum in opposition to Defendant's Motion for Judgment on the Pleadings ("the Motion"). For a multitude of legal and policy reasons as stated herein, the Motion should be denied.

## INTRODUCTION

This case stems from a plane crash that injured two people and killed two more, leaving two widows and seven children without their fathers.  This crash was caused by defective aircraft engine magnetos designed, manufactured, tested and distributed in South Carolina by Defendant Champion Aerospace LLC ("Defendant"), a company headquartered in Liberty, South Carolina. After placing its magnetos into the stream commerce in South Carolina, Defendant's defective products were installed on an airplane and, after only 50 hours in service, caused an engine failure resulting in a crash landing and catastrophic post-crash fire.

The claims in this matter have been brought by three individual plaintiffs—Shanna Zareski, Dawn Stelling, and Joshua Reikes—who are seeking relief for injuries they personally suffered.[1] Plaintiffs Zareski and Stelling also maintain claims for wrongful death and survival in their representative capacity as executors of their deceased husband's Estates, for which they and their seven children are the beneficiaries.

Defendant is improperly asking this federal court to dismiss Plaintiffs' claims by applying a state procedural statute (the "Door-Closing Statute") that is inapplicable to the parties at issue, and that was designed to preclude litigation of claims "unconnected" to South Carolina. This statute, however, is simply inapplicable to the claims at hand; first, because it does not apply to limited liability companies like Defendant; and second and more importantly, because these claims arose in, are inextricably linked to, and are connected to South Carolina. Further, as Plaintiffs demonstrate herein, even if the statute *does* apply to the present matter, there are clear countervailing federal interests that preclude its application to this case, where South Carolina is not only the *most appropriate* forum, but the *only* forum in which Plaintiffs can practically seek justice.

## STANDARD OF REVIEW

When reviewing a motion for judgment on the pleadings, courts apply "the same standard for Federal Rule of Civil Procedure 12(c) motions as for motions made pursuant to Rule 12(b)(6)." Indep. News, Inc. v. City of Charlotte, 568 F.3d 148, 154 (4th Cir. 2009). "Thus, the court may grant Defendant's Rule 12(c) motion only "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the

---

[1] Plaintiffs Stelling and Reikes were injured in the crash, and Plaintiffs Stelling and Zareski also suffered loss of consortium as a result of their husband's deaths in the Incident.

plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Hardy v. Lewis Gale Med. Ctr., LLC, 377 F. Supp. 3d 596, 604–05 (W.D. Va. 2019) (citing PETA v. U.S. Dept. of Agric., 861 F.3d 502, 506 (4th Cir. 2017)).

In resolving this Motion, the court may consider the pleadings, relevant facts obtained from the public record, and exhibits to the motion that are "integral to the complaint and authentic." Charleston Waterkeeper v. Frontier Logistics, L.P., -- F. Supp 3d. --, 2020 WL 5629717, at *2 (D.S.C. 2020) (quoting Massey v. Ojaniit, 759 F.3d 343, 347 (4th Cir. 2014)).

## ARGUMENT

Defendant's position is based solely upon its improper application of South Carolina's "Door-Closing" statute to the facts of this case. The statute sets forth the following:

> An action against a ***corporation*** created by or under the laws of any other state, government or country may be brought in the circuit court:
>
> (1) By any resident of this State for any cause of action; or
>
> (2) By a plaintiff not a resident of this State when the cause of action shall have arisen or the subject of the action shall be situated within this State.

S.C. Code Ann. § 15-5-150 (hereinafter the "Door-Closing Statute") (emphasis added). The South Carolina Supreme Court held that this statute pertains to a party's "capacity to sue." Farmer v. Monsanto Corp., 353 S.C. 553, 557, 579 S.E.2d 325, 327 (2003).

As set forth below, the Door-Closing Statute does not preclude Plaintiffs' claims, and dismissal based thereon would be contrary to the clear language and purpose of the statute, case law, and both state and federal public policy.

**I.      The Door-Closing Statute does not apply to limited liability companies**

The Door Closing Statute applies to "[a]n action against a ***corporation*** created by or under the laws of any other state. . . ." S.C. Code Ann. § 15-5-150 (emphasis added). Defendant Champion Aerospace, LLC is a *limited liability company*, not a corporation. "If a statute's language is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for employing rules of statutory interpretation and the court has no right to look for or impose another meaning." Eagle Container Co., LLC v. Cty. of Newberry, 666 S.E.2d 892, 896 (S.C. 2008), quoting Miller v. Doe, 441 S.E.2d 319, 321 (S.C. 1994). As a result, the Door-Closing Statute does not apply to a case brought against Defendant Champion, an LLC, not a corporation.

According to the annotated credits of the statute, the Door-Closing Statute was enacted in 1870. Then, in 1994, South Carolina enacted the South Carolina Limited Liability Company Act ("SCLLCA"). Act No. 448, 1994 S.C. Acts ___. Section One of the enacting legislation contained the SCLLCA itself, but other sections of the same legislation addressed portions of the South Carolina Code of Laws that necessarily changed due to the introduction of the LLC as a business entity. Section Two of the legislation, for example, added S.C. Code Ann. § 12-2-25 to the taxation volume of the Code of Laws to specify that the word "'corporation' includes a limited liability company or professional or other association taxed for South Carolina income tax purposes as a corporation." S.C. Code Ann. § 12-2-25(A)(3). Nowhere else within this enacting legislation, however, did the General Assembly equate "corporation" with "limited liability company."[2] Clearly, however, if the General Assembly wished limited liability companies to be considered "corporations" under the Door-Closing Statute, it knew how to do so. "Under our general rules of construction, the words of a statute must be given their plain and ordinary meaning without resort

---

[2] The SCLLCA would be replaced by the Uniform Limited Liability Company Act just two years later. Act No. 343, 1996 S.C. Acts ___. The new legislation did not alter S.C. Code Ann. § 12-2-25(A)(3). Rather it recognized the statute's preservation. See S.C. Code Ann. §§ 33-44-201, -1001.

to subtle or forced construction to limit or expand the statute's operation." <u>State v. Muldrow</u>, 559 S.E.2d 847, 849 (S.C. 2002), <u>citing</u> <u>State v. Grooms</u>, 540 S.E.2d 99 (S.C. 2000). The plain words of the Door-Closing Statute—especially when viewed in the context of related amendments to the Code—expressly limit its application to corporations; thus, claims against Defendant, a limited liability company, such as those in the present case, are not limited by the statute.

**II.     The Door-Closing Statute does not apply to claims against Defendant, because Plaintiffs' claims arise from acts and omissions that occurred in South Carolina.**

Even if the Court were to expand the Door-Closing Statute beyond corporations, to claims against a limited liability company such as Defendant, the statute expressly permits Plaintiffs to bring their causes of action because they arise from acts and omissions Defendant committed entirely within this State. <u>See</u> S.C. Code Ann. § 15-5-150(2).

The Door-Closing Statute is concerned with "provid[ing] a forum for wrongs connected with the state while avoiding the resolution of wrongs in which the state has little interest." <u>Murphy v. Owens-Corning Fiberglass Corp.</u>, 590 S.E.2d 479, 481 (S.C. 2003). To further that goal, the statute *expressly permits claims* by nonresidents where "the cause of action *arises in the state* or the subject of the action is situated in the state." <u>Smith v. Mack Trucks, Inc.</u>, 991 F.2d 791 (4th Cir. 1993) (emphasis added). "A cause of action 'arises' when an act or omission that creates the right to bring the suit happens or begins." <u>Murphy v. Owens Corning Fiberglass Corp.</u>, 550 S.E.2d 589, 594 (S.C. Ct. App. 2001) (overruled on other grounds).[3]

---

[3] The South Carolina Court of Appeals issued this opinion sitting en banc. The supreme court later affirmed that opinion in <u>Murphy v. Owens-Corning Fiberglass Corp.</u>, 590 S.E.2d 479 (S.C. 2003). The Court of Appeals opinion remains relevant to the determination of when or where a cause of action arose. In his concurring opinion to the supreme court's ruling, Chief Justice Toal advocated for a clear adoption of the court of appeal's distinction between arise and accrue. Then Justice Pleicones, writing for the majority, stated "[w]e do not perceive any meaningful distinction between our resolution of [the Door-Closing issue] and that of the concurring opinion." <u>Murphy</u>, 590 S.E.2d 479, n. 5 (S.C. 2003). The majority simply did not believe it needed to determine both

Plaintiffs' claims against Defendant are inextricably tied to South Carolina. Every act and omission alleged in the complaint occurred in South Carolina. Compl. ¶¶ 10, 19, 20. Defendant designed and manufactured the subject magnetos at its facilities in South Carolina. Compl. ¶¶ 20, 21. Defendant issued its warranties, distributed and shipped the subject magnetos from South Carolina. Defendant even attests that, after its products left South Carolina, it never again touched the products. (**Exhibit A**—Champion Moton to Quash at 3-4). While the products were shipped to Texas, and then to California, where the plane crashed, due to the nature of air travel, the location of the crash was a mere fortuity; the airplane could have crashed anywhere in the world, including in South Carolina. Therefore, the only relevant facts pertaining to Plaintiffs' claims are tied squarely to South Carolina, and only South Carolina.

In fact, Plaintiffs initially brought claims against Defendant in California, yet Defendant refused to allow suit to proceed in California.[4]  In doing so, Defendant unequivocally stated that "none of Plaintiffs' claims arise out of, let alone are 'substantially connected' to, conduct by [Defendant] in California." (**Exhibit A**—Champion's Motion to Quash at 14).  Now, however, Defendant disingenuously argues precisely the opposite in the instant motion, claiming that "Plaintiffs' Causes of Action Arose in California, Not South Carolina." See [ECF Doc. 10] Mot. at p. 6. Defendant has already admitted that Plaintiffs' claims did not arise in California as they now claim, and for the reasons stated *infra*, were correct in so admitting previously.

---

when the cause of action arose and when it accrued given the case's procedural posture.  Id. Therefore, both Murphy opinions are insightful.  To wit, the supreme court later cited the Murphy court of appeals opinion favorably.  Henderson v. Allied Signal, Inc., 644 S.E.2d 724, 727 (S.C. 2007).

[4] In the California action, Defendant moved to quash based on lack of personal jurisdiction. See **Exhibit A**—Champion Motion to Quash. Based on the assertions Defendant made under oath in furtherance of its Motion to Quash, Plaintiffs agreed to dismiss Defendant from the California action, and to re-file in South Carolina.

Each of Plaintiffs' tort claims arises from Defendant's actions and inactions in this State. "A cause of action 'arises' when the act or omission that creates the right to bring suit happens or begins." Murphy, 550 S.E.2d at 593-94 (S.C. Ct. App. 2001). The airplane engine component products at issue here (the magnetos) were designed and manufactured in Liberty, South Carolina. Compl. ¶¶ 19, 20. Decisions related to the manufacture, as well documents and witnesses related to failed products are located in South Carolina. In Champion's own words, "any witnesses and documents relating to any claims against Champion are located in South Carolina." (**Exhibit A**— Champion's Motion to Quash at 15). Indeed, Champion claimed while arguing that California lacked personal jurisdiction over it, "South Carolina, Delaware,[5] and Ohio[6]…have an interest in protecting [their] businesses at home there and adjudicating disputes that will impact their livelihood." (**Exhibit A**—Champion's Motion to Quash at 14).

Defendant's Motion endorses a blatant fallacy that, for it to be sued in South Carolina, the plane must have crashed in South Carolina. In support of that position, Defendant cites what it characterizes as "a long line of South Carolina cases support[ing] [its] conclusion." However, the cited cases are not pertinent to the issue of where a cause of action arises. See e.g., Parsons v. Uniroyal-Goodrich Tire Corp., 438 S.E.2d 238 313 S.C. 394, (1993) (the issue of whether the

---

[5] See discussion, *infra*, regarding Plaintiffs' ability to litigate and to obtain full relief in Delaware.

[6] Plaintiffs dispute that Ohio would have personal jurisdiction over these claims, if this is indeed even what Defendant meant when it argued Champion was "at home" in Ohio. Champion's sole member is a corporation with its principal place of business in Ohio. Pursuant to Daimler AG v. Bauman, however, a limited liability company is not subject to suit in every state where its members are citizens. 571 U.S. 117, 134 S. Ct. 746 (2014). See also, Mountain Funding, LLC v. Blackwater Crossing, LLC, No. 3:05CV513-MU, 2006 WL 1582403, at 3 (W.D.N.C. June 5, 2006)(unpublished)("the practice of disregarding a limited liability company as an entity and looking to the citizenship of its member is only used to determine whether a court has diversity for subject matter jurisdiction."). Defendant admits that Ohio does not have personal jurisdiction by omitting it from their instant motion as an alternative forum in which Plaintiffs could have asserted their claims.

cause of action arose in South Carolina was not before the court. The singular issue on appeal that the court could consider was the relevance of corporation's principal place of business.); Nix v. Mercury Motor Exp., Inc., 242 S.E.2d 683 (S.C. 1978) (the issue of whether the cause of action arose in South Carolina was not before the court. The negligent actions and damages occurred out of the state.); Gibbs v. Young, 130 S.E.2d 484 (S.C. 1963) (the issue of whether the cause of action arose in South Carolina was not before the court. The negligent actions and damages occurred out of state).

Instead, there are only three cases relevant to a discussion of when and where a cause of action arises for purposes of the Door-Closing Statute: the Murphy opinion from the South Carolina Court of Appeals, 550 S.E.2d 589, the Murphy opinion from the South Carolina Supreme Court, 590 S.E.2d 479, and Cornelius v. Atlantic Grey Hound Lines, 180 S.E. 791, 791-92 (S.C. 1935). In the court of appeals' Murphy opinion, the court directly addressed the difference between the terms "accrue" and "arise," and discussed the policy considerations behind the Door-Closing Statute. See Murphy, 550 S.E.2d at 593-94. The court concluded "[a] cause of action 'arises' when the act or omission that creates the right to bring suit happens or begins" while "[a] cause of action 'accrues' when it becomes 'complete so that the aggrieved party can begin and prosecute such action.'" Id. With those definitions in place, the court held "the alleged wrongdoing . . . originated in South Carolina. [The Plaintiffs'] claims, therefore, *arose* in this state even though they did not accrue until the mesothelioma was diagnosed." Id. (emphasis in original).

The Supreme Court agreed, affirming the opinion of the Court of Appeals. Murphy, 590 S.E.2d at 482. Specifically, the Supreme Court held "[t]he fact that the legal wrong did not result in injury and/or damages until the Plaintiff had left the state does not foreclose a suit under the door closing statute." Id. at 482. Of note, the "traditional tort settings" language Defendant

Champion cites from <u>Murphy</u> was specifically considered and disregarded by the Supreme Court in determining when and where a cause of action arose. <u>Id.</u> ("We find that it is not appropriate to apply a strict accrual test to . . . tort actions brought by a nonresident against a foreign corporation.").

The <u>Cornelius v. Atlantic Grey Hound Lines</u> court was likewise tasked with determining when and where a cause of action arose; however, the facts of that case clearly distinguish it from the case at hand, limiting its applicability. In <u>Cornelius</u>, the Plaintiff purchased a bus ticket to transport her across the eastern United States. <u>See</u> 180 S.E. 791, 791-92 (S.C. 1935). During her travels, she boarded and disembarked from various buses and bus lines. <u>Id.</u> At each stage, a portion of her ticket was removed, and she was returned the remainder. <u>Id.</u> When she later attempted to board a bus in Camden, South Carolina, the foreign defendant bus line refused her ticket and ejected her from the bus. <u>Id.</u> She sued based on the ejectment as well as the fact she was ejected "'in a rude manner.'" <u>Id.</u> at 93. On those facts, the court determined the cause of action arose in South Carolina and suit could be brought in South Carolina by a nonresident individual against the foreign corporation. <u>Id.</u> However, the <u>Cornelius</u> decision and facts from almost 90 years ago have little relevance to the case *sub judice*, for the negligent acts alleged differ significantly. Here, the Plaintiffs allege that all Defendant's negligent acts and omissions in traditional tort and product contexts occurred in South Carolina, while only the harms fortuitously occurred in California. <u>See</u> <u>generally</u> Compl. The context and allegations of <u>Cornelius</u> are incongruent with the facts at bar. Thus, the <u>Cornelius</u> opinion is inapplicable to the case at hand; it does not instruct that the Door-Closing Statute applies to this case or that the doors of South Carolina federal court are closed to Plaintiffs. Plaintiffs also note the South Carolina Supreme

Court interpreted the Door-Closing Statute and facts of the <u>Cornelius</u> case to *open* the doors of South Carolina's courts, not close them.

Moreover, Plaintiffs' Complaint includes breach of warranty claims, which sound in contract. <u>See, e.g.</u>, Compl. ¶¶ 47-50. <u>See Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.</u>, 666 S.E.2d 247, 255 (S.C. 2008) (overruled on other grounds) ("Three theories of liability are available to an individual in South Carolina who has suffered a loss as the result of a defective product: breach of warranty, which sounds in contract, and strict liability and negligence, both of which sound in tort."). Champion acknowledges such warranties in its answer. Ans. ¶ 49 ("the parties are directed to Champion's warranties applicable to each magneto."). Further, publicly-available documents related to Champion's express warranties, show their nexus with, and only with, South Carolina. (**Exhibit B**—Champion Warranty at 3).[7]

"When a contract is involved, the question for purposes of the door-closing statue is whether the contract was made or was to be performed in South Carolina." <u>Snell v. Golden Rule Ins. Co.</u>, C.A. 6:08-3555-MHM, 2009 WL 185723, at *2 (D.S.C. 2009) (unpublished); <u>see also Hencely v. Fluor Corp., Inc.</u>, 475 F. Supp. 3d 464, 467 (D.S.C. 2020) (Door-Closing Statute satisfied where contract "which forms the basis of Plaintiff's breach of contract claim and serves as the source of various duties that Fluor is alleged to have breached in Plaintiff's other claims,

---

[7] As discussed *infra*, the issue of where the breach of warranty and other claims arose are fact intensive, making it unsuitable for determination in its current posture; however, these warranty documents are integrally tied to both Plaintiffs' Complaint and the admissions in Defendants' Answer. <u>see Charleston Waterkeeper</u>, 2020 WL 5629717, at *2 (On Rule 12(c) motion, "the court may consider the pleadings . . . relevant facts obtained from the public record, and exhibits to the motion that are "integral to the complaint and authentic."); <u>see also Kassem v. Ocwen Loan Servicing, LLC</u>, 704 Fed. Appx. 429, 432 (6th Cir. 2017). Either more discovery is necessary to fully resolve this issue, <u>see</u> Fed. R. Civ. P. 12(d), or Plaintiffs submit that these documents and the other materials from the public record, like those filed by Defendants in state court and subject to judicial notice, merit denial of this Rule 12(c) motion.

was centrally administered from Fluor's corporate offices in Greenville, South Carolina."). The presence of the contractual warranty claims, the performance of which would be completed in South Carolina, which originated in South Carolina, and which generate the South Carolina source of many of Defendant's tort duties, forecloses all arguments that the Door-Closing Statute prevents Plaintiffs from bringing their claims.

In essence, the facts and relevant case law lead to the conclusion that this cause of action arose in South Carolina, as a result of the tortious conduct of Champion that occurred solely in South Carolina, and their entering into and/or performing a contract (i.e., a warranty) in South Carolina. The defective products were fully designed, manufactured and warrantied within the state of South Carolina. Compl. ¶¶ 19-20. All documents and witnesses related to the tortious conduct are found in South Carolina. (**Exhibit A**—Champion Motion to Quash at 15).

While the result of the Defendant's acts and omissions did not come to pass until the plane crash in California, the tortious conduct giving rise to that tragedy occurred wholly within the State of South Carolina. See Murphy, 550 S.E.2d at 595 (S.C. Ct. App. 2001) (stating plaintiff demonstrated a "sufficient connection to this state by showing that the act giving rise to the right of action occurred in South Carolina."); Hencely, 475 F. Supp. 3d at 467. Indeed, Champion has not established any facts to indicate that any of its alleged conduct occurred outside of South Carolina. Therefore, Plaintiffs respectfully request this court find the causes of action alleged in their Complaint arose in the state of South Carolina for purposes of the Door-Closing Statute, and that Door-Closing Statute does not preclude Plaintiffs' claims.

### III. Fed. R. Civ. P. 17(b) precludes application of the Door-Closing Statute to claims by the individual Plaintiffs in federal court.

Additionally, the Defendant's motion as to the Plaintiffs, in their individual capacity, should be denied because the Door-Closing Statute conflicts with Fed. R. Civ. P. 17(b). As noted

above, the Door-Closing Statute "determines the capacity of a party to sue." Farmer v. Monsanto Corp., 579 S.E.2d 325, 327 (S.C. 2003).[8] By its plain terms, so does Rule 17. The Supreme Court recently reiterated the procedure for resolving whether a federal rule conflicting with a state statute controls.

> The framework for our decision is familiar. We must first determine whether [the federal rule] answers the question in dispute. If it does, it governs—[state statute] law notwithstanding—unless it exceeds statutory authorization or Congress's rulemaking power. We do not wade into Erie's murky waters unless the federal rule is inapplicable or invalid.

Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 398, 130 S. Ct. 1431, 1437, 176 L. Ed. 2d 311 (2010). Applying this framework reveals that Fed. R. Civ. P. 17 – not the Door-Closing Statute – establishes the Plaintiffs' capacity to sue in this matter.

### a. Rule 17 addresses Plaintiffs' "capacity to sue"

The question in dispute is whether Plaintiffs have capacity to bring suit. Fed. R. Civ. P. 17(b) provides an answer:

> Capacity to sue or be sued is determined as follows:
>
> (1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile;
> …
> (3) for all other parties, by the law of the state where the court is located…

Fed. R. Civ. P. 17. Thus, as to the Plaintiffs' bringing claims in their individual capacities—Shanna Zareski, Dawn Stelling, and Joshua Reikes—the federal rule controls their capacity to sue and makes this determination under the laws of their home states. Whereas all three reside in states

---

[8] This ruling overturned a long line of authority in which the South Carolina Supreme Court "framed the issue of the door-closing statute as one of subject matter jurisdiction as held previously by this Court." Farmer, 579 S.E.2d at 327.

other than South Carolina, South Carolina's Door-Closing Statute is irrelevant to their capacity to bring individual claims. As to the Plaintiffs' suing in a representative capacity, Rule 17 would not interfere with the application of South Carolina's Door-Closing Statute.[9]

**b. Rule 17 does not exceed statutory authorization or Congress's rulemaking power.**

"Congress has undoubted power to supplant state law, and undoubted power to prescribe rules for the courts it has created, so long as those rules regulate matters 'rationally capable of classification' as procedure." Shady Grove Orthopedic Assocs., P.A., 559 U.S. at 406, 130 S. Ct. at 442 (quoting Hanna v. Plumer, 380 U.S. 460, 472, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965)). That power and its limitations stem from the Rules Enabling Act:

> The Rules Enabling Act, 28 U.S.C. s 2072 (1958 ed.), provides, in pertinent part:
>
> 'The Supreme Court shall have the power to prescribe, by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure of the district courts of the United States in civil actions.
>
> 'Such rules shall not abridge, enlarge or modify any substantive right and shall preserve the right of trial by jury…"

Hanna v. Plumer, 380 U.S. at 464, 85 S. Ct. at 114 (quoting 28 U.S.C. § 2072). As to whether a rule exceeds the power prescribed by the Rules Enabling Act:

> The test is not whether the rule affects a litigant's substantive rights; most procedural rules do. What matters is what the rule itself regulates: If it governs only "the manner and the means" by which the litigants' rights are "enforced," it is valid; if it alters "the rules of

---

[9] Of note, however, California allows its domiciliaries to bring wrongful death and survival claims in their individual capacities. See Cal. Civ. Prac. Code § 377.60. Therefore, under Rule 17(b)(1), Plaintiff Shanna Zareski, a domiciliary of California, can bring wrongful death claims in her individual capacity. Further, the minors' claims are tolled and can be brought in South Carolina in their respective individual capacities in accordance with Rule 17, once the minors are 18 years old.

decision by which [the] court will adjudicate [those] rights," it is not.

Shady Grove Orthopedic Assocs., P.A., 559 U.S. at 407, 130 S. Ct. at 1442 (quoting Mississippi Publishing Corp. v. Murphree, 326 U.S. 438, 445, 66 S. Ct. 242, 90 L. Ed. 185 (1946)). Within the same opinion, the Supreme Court noted "[a]pplying that test, we have rejected every statutory challenge to a Federal Rule that has come before us." Shady Grove Orthopedic Assocs., P.A., 559 U.S. at 407, 130 S. Ct. at 1442. Nevertheless, the question before us becomes whether Rule 17(b)'s capacity to sue provisions regulates "matters capable of classification as procedure," or goes further than that prescribed in the Rules Enabling Act.

Federal courts have consistently analyzed Rule 17's "capacity to sue" provisions as a procedural issue. See, e.g., Gas Serv. Co. v. Hunt, 183 F.2d 417, 419 (10th Cir. 1950) ("[T]he person in whose name the action may be prosecuted for the enforcement of the substantive right is procedural, not substantive."); Du Vaul v. Miller, 13 F.R.D. 197, 198 (W.D. Mo. 1952) ("A re-examination of Rule 17, as well as Rule 19, Fed. Rules Civ. Proc., 28 U.S.C.A., convinces us that the question is purely a procedural one in this court and does not change the substantive law of [the state]."); Pelican Renewables 2, LLC v. Directsun Solar Energy & Tech., LLC, 325 F.R.D. 570, 577 (E.D. La. 2016) (finding "capacity to sue" as procedural and declining to apply Louisiana door-closing statute). Likewise, Plaintiffs' "capacity to sue" in this case is a procedural question. Therefore, because Rule 17(b)(1) governs the individual plaintiffs' capacity to sue, the conflicting Door-Closing Statute shall not apply, and the Motion must be denied as to their claims.

The Supreme Court's Shady Grove opinion, in fact, turned away an attempt to apply a state door-closing statute to procedural matters in federal court. There, the defendant sought to defeat a purported federal class action by enforcing a New York statute that "prohibits class actions in suits seeking penalties or statutory minimum damages." Shady Grove Orthopedic Assocs., P.A., 559

U.S. at 396, 130 S.Ct. at 1436. The Supreme Court held Fed. R. Civ. P. 23 controlled, noting that a federal class action under Rule 23 "merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits. And like traditional joinder, it leaves the parties' legal rights and duties intact and the rules of decision unchanged." Id. at 408, 130 S. Ct. at 1443. The same is true in this matter where Rule 17 does not seek to impact parties "legal rights and duties," but rather merely provides the manner in which those legal rights and duties may be enforced in federal court.

The practical effect of granting the Defendant the relief it seeks here would be the invalidation of the whole of Fed. R. Civ. P. 17(b).

> A Federal Rule of Procedure is not valid in some jurisdictions and invalid in others—or valid in some cases and invalid in others—depending upon whether its effect is to frustrate a state substantive law (or a state procedural law enacted for substantive purposes).

Shady Grove Orthopedic Assocs., P.A., 559 U.S. at 409, 130 S. Ct. at 1444. The only way Rule 17(b) would not control the question of capacity to sue in this case would be if it necessarily violated the parameters of the Rules Enabling Act, in which case the whole of Rule 17(b) must be invalidated. No court has made such a ruling.

Plaintiffs' position is entirely consistent with Fourth Circuit case law concerning the application of the Door-Closing Statute in federal court. See, e.g., Tuttle Dozer Works, Inc. v. Gyro-Trac (USA), Inc., 463 F. Supp. 2d 544, 549 (D.S.C. 2006) ("It has been long held that federal courts sitting in diversity must apply [the Door-Closing Statute] unless countervailing federal interests preclude its application."). Each one of the seven cases cited by the District Court in Tuttle Dozer Works predated the South Carolina Supreme Court's 2003 reclassification in Farmer of the Door-Closing Statute as one pertaining to "capacity to sue" rather than subject matter jurisdiction. As such, until Farmer, no conflict existed between Fed. R. Civ. P. 17(b) and the Door-

Closing Statute. Once that conflict appeared, however, the Rules Enabling Act analysis set forth above controlled its resolution.

Though the <u>Tuttle Dozer Works</u> district court decision was authored three years after <u>Farmer</u>, the court was not asked to conduct a Rules Enabling Act analysis of Fed. R. Civ. P. 17(b).[10] Rather, the <u>Tuttle Dozer Works</u> plaintiff failed to raise <u>Farmer</u>'s re-interpretation of the Door-Closing Statute as determining capacity rather than subject matter jurisdiction, and instead simply argued the Door-Closing Statute did not apply to his case because of <u>Farmer</u>'s observation that "[t]he statute clearly does not apply to federal suits . . . ." <u>Farmer</u>, 353 S.C. at 558, 579 S.E.2d at 328. The district court turned away this argument, however, citing a 1949 United States Supreme Court holding that applied state court door-closing statutes to federal courts sitting in diversity because failure to do so "would create discriminations against citizens of the State in favor of those who can invoke the diversity jurisdiction of the federal courts. It was that element of discrimination that <u>Erie R. Co. v. Tompkins</u> was designed to eliminate." <u>Tuttle Dozer Works, Inc.</u>, 463 F. Supp. 2d at 549 (<u>quoting</u> <u>Woods v. Interstate Realty Co.</u>, 337 U.S. 535, 538, 69 S. Ct. 1235, 1237, 93 L. Ed. 1524 (1949)). But as the Supreme Court recently reiterated in <u>Shady Grove</u>, "[w]e do not wade into <u>Erie</u>'s murky waters unless the federal rule is inapplicable or invalid." <u>Shady Grove Orthopedic Assocs., P.A.</u>, 559 U.S. at 398, 130 S. Ct. at 1437; <u>see</u> <u>also</u> <u>Odom v. Penske Truck Leasing Co., L.P.</u>, 893 F.3d 739, 743 (10th Cir. 2018) ("And though <u>Erie</u> provides an alternate justification for federal courts to incorporate state door-closing statutes into diversity suits, it also requires adherence to the Federal Rules of Civil Procedure in actions touching those statutes.").

---

[10] Indeed, even if the <u>Tuttle</u> court had been asked to conduct such an analysis, the <u>Tuttle</u> decision was decided 4 years before the Supreme Court's <u>Shady Grove</u> decision setting forth the proper analysis.

Because Rule 17(b) is neither inapplicable nor invalid, the concerns raised by <u>Woods</u> are inapplicable here.[11]

Because Fed. R. Civ. P. 17(b)(1) trumps the Door-Closing Statute and determines the capacity of the non-resident individual Plaintiffs to bring claims, the Motion as to claims brought by the individual Plaintiffs should be denied. As to claims brought by Plaintiffs in their representative capacity, Fed. R. Civ. P. 17(b)(3) leaves the question of capacity to sue up to the law of the forum state (here South Carolina). Thus, denial of the Motion as to claims brought by Plaintiffs in their representative capacity turns on whether the Door-Closing Statute applies at all (see *supra*, Section II) and/or, if it does apply, whether countervailing federal interests mean the Court should not apply the Door-Closing Statute here (see *infra* Section IV).

## IV. Countervailing federal considerations prohibit the application of the Door-Closing Statute

Even if the Door-Closing Statute applies and would potentially bar some of Plaintiffs' claims, which it does not, it is well settled that federal district courts need not apply South Carolina's Door-Closing Statute in diversity cases if doing so would frustrate important countervailing federal interests. <u>See</u> <u>Szantay v. Beech Aircraft Corp.</u>, 349 F.2d 60, 65 (4th Cir. 1965); <u>Cent. Wesleyan Coll. v. W.R. Grace & Co.</u>, 143 F.R.D. 628, 639 (D.S.C. 1992), <u>aff'd</u>, 6 F.3d 177 (4th Cir. 1993). Contrary to Defendant's arguments in their moving papers, this case

---

[11] The continuing vitality of <u>Woods</u> also has been called into question in the wake of <u>Hanna v. Plumer</u>. <u>See</u>, <u>e.g.</u>, <u>Domino Media, Inc. v. Kranis</u>, 9 F. Supp. 2d 374, 381 (S.D.N.Y. 1998), <u>aff'd</u>, 173 F.3d 843 (2d Cir. 1999)("<u>Hanna</u> implicitly calls <u>Woods</u> into question by suggesting that Rule 17(b) applies to the exclusion of a forum state door-closing statute so long as it is a valid exercise of authority under the Rules Enabling Act."); <u>McKenzie v. Hawaii Permanente Med. Grp., Inc.</u>, 29 F. Supp. 2d 1174, 1176 (D. Haw. 1998)("First, the continuing vitality of <u>Woods</u> has been questioned."); <u>Joe Hand Promotions, Inc. v. Mooney's Pub Inc.</u>, 2014 WL 4748272, at *4 (C.D. Ill. 2014) (unpublished).

certainly presents such countervailing federal interests that preclude the Door-Closing Statute's application to *any* of the Plaintiffs claims here.

The Szantay court noted several countervailing federal considerations in refusing to apply the Door-Closing Statute to the facts of that case, including: (1) the purpose in the grant of diversity jurisdiction of avoiding discrimination against nonresidents; (2) the policy of encouraging a state to enforce the laws of its sister states; and (3) the fact that South Carolina was the only state in the country in which the two defendants could be joined. See Proctor & Schwartz, Inc. v. Rollins, 634 F.2d 738, 739-40 (4th Cir. 1980) (citing Szantay, 349 F.2d at 64). Courts have tended to focus their analysis of countervailing federal interests primarily on whether the plaintiff could have brought their suit in another forum and gained "full relief". See Bumgarder v. Keene Corp., 593 F.2d 572, 573 (4th Cir. 1979); Rollins, 634 F.2d at 740 (question for countervailing considerations is whether another "more logical, *convenient* forum" was available) (emphasis added) . Defendant incorrectly asserts that another such forum was available to Plaintiffs here.  It was not.

Defendant identifies Delaware as the only alternative forum where Plaintiffs supposedly could have brought their suit and gained "full relief." See [ECF Doc. 10] Mot. at 8.[12]  Defendant, however, would undoubtedly object to the convenience of Delaware as a forum, and would undoubtedly have prevailed, given there is literally no connection between Plaintiffs' claims and the State of Delaware.  If the courts of the only other state where Defendant alleges Plaintiffs could bring their claims would have dismissed the case on grounds of *forum non conveniens*, then Plaintiffs could not, in actuality, have proceeded there nor obtained "full relief." See Hencely, 475 F. Supp. 3d at 468-69 (holding defendant's lack of jurisdiction and *forum non conveniens*

---

[12] As discussed *supra*, Defendant previously objected to personal jurisdiction over it in California, the place of the plane crash underlying these claims, eliminating that State as a potential alternative forum.

arguments shutting plaintiff out of another jurisdiction, and the strong likelihood of them making such arguments in other jurisdictions triggered countervailing federal interests) (citing Bumgarder, 593 F.2d at 573; and Szantay, 349 F.2d at 65-66). Thus, countervailing federal interests are clearly triggered because Plaintiffs do not have any other forums in which to join this Defendant.

Defendant would surely have raised a *forum non conveniens* challenge in Delaware because it has already admitted (rightly so) that Delaware has no connection whatsoever to Plaintiffs' claims. The only argument Defendant has advanced for Delaware as a reasonable alternative forum is the fact that Champion is a Delaware LLC. See [ECF Doc. 10] Mot. at p. 8. In its Motion to Quash Plaintiffs' claims in California, however, Defendant unambiguously stated that "any witnesses and documents relating to any claims against Champion are located in South Carolina." (**Exhibit A**—Champion Motion to Quash at p. 15). Plaintiffs are not aware of *any* Champion facilities in Delaware, let alone any facilities at which the subject products were designed or manufactured. There is literally no connection between Plaintiffs' claims and Delaware other than the fact that Defendant filed its Articles of Organization there to obtain favorable tax status. Therefore, a case filed in Delaware under these facts would present the quintessential *forum non conveniens* dismissal scenario.

The potential for Plaintiffs claims to survive in Delaware are further diminished considering Delaware's adoption of a minority test for evaluating when to dismiss for *forum non conveniens*. In Aranda v. Philip Morris USA, Inc., 183 A.3d 1245 (Del. 2018), the Delaware Supreme Court held that whether there was an available alternative forum is merely a factor to be considered in the *forum non conveniens* analysis, rather than a requirement before any dismissal on the basis of *forum non conveniens*. Id. at 1252-55 ("An available alternative forum is not a threshold requirement before dismissing a case for *forum non conveniens*."). Therefore, in addition

to its already insurmountable arguments against Delaware as a convenient forum for this case, Defendant Champion could have, and surely would have argued for a *forum non conveniens* dismissal despite their asserting South Carolina is not an available alternative forum due to the Door-Closing Statute.

Defendant may continue its jurisdictional gamesmanship by arguing that Delaware was somehow an alternative forum despite these glaring inconvenience issues. For instance, Champion's moving papers refer to numerous cases in which a plaintiff's failure to file in an alternative forum within the statute of limitations meant that no countervailing federal considerations were triggered. See [ECF No. 10] Mot. at p. 8-9 (citing Rollins, 634 F.2d at 740; Bumgarder, 593 F.2d at 573; Boisvert v. Techtronic Ind. N.A., Inc., 56 F. Supp. 3d 750, 752 (D.S.C. 2014); Cal. Buffalo v. Glennon-Bitton Group, Inc., 910 F. Supp. 255, 257 (D.S.C. 1996); Collins v. R.J. Reynolds Tobacco Co., 901 F. Supp. 1038, at 1042 n. 2 (D.S.C. 1995)). There is a significant difference, however, between an alternative forum with reasonable convenience connections to the facts of a case rejecting the claims on the merits as time-barred, as in those cases, and an alternative forum being unable to hear the merits claims at all because the forum has no connection with the facts of the case whatsoever. While the plaintiffs in those cases could have filed and received full relief in an alternative form had they filed in a timely fashion, Plaintiffs here would never have been granted *any* relief in Delaware, the only alternative forum, regardless of when they filed. Therefore, the cases cited by Defendant are irrelevant and inapplicable to the case at hand.

Since Defendant would no doubt challenge Plaintiffs' ability to secure full relief in the only other available forum besides South Carolina, this Court should also consider the numerous important countervailing federal interests that would be frustrated if the Door-Closing Statute were

enforced to bar Plaintiffs' claims. There is a "federal interest in providing a convenient forum for the adjudication of the plaintiffs' actions." <u>Szantay</u>, 349 F.2d at 66 (("[W]e hold that the conflict here between federal and state policies, if in fact one exists, is to be resolved in favor of the federal interest in providing a convenient forum for the adjudication of the plaintiffs' actions."); 28 U.S.C. § 1404 (codifying *forum non conveniens* doctrine and reiterating federal interest in providing a convenient forum for parties and witnesses). South Carolina is manifestly the state with the most significant interest and which provides the most convenient forum for all parties for hearing Plaintiffs' claims.

There are also numerous other countervailing federal interests present that conflict with the application of the Door-Closing Statute.  These include: (1) diversity jurisdictions' purpose of avoiding discrimination against nonresidents; and (2) the policy of encouraging a state to enforce the laws of its sister states. <u>Szantay</u>, 349 F.2d at 65-66.  Closing the federal courthouse doors to Plaintiffs would entirely frustrate the purpose of the grant of diversity jurisdiction, whose role is to "make certain that: '(a) a nonresident litigant resorting to federal diversity jurisdiction should obtain the same relief as a resident litigant asserting the same cause of action would receive in state courts.'" <u>Id.</u> (citing <u>Markham v. City of Newport News</u>, 292 F.2d 711, 718 (4th Cir. 1961)). Further, "the duty imposed on federal courts in diversity cases to hear and adjudicate the issues before it" is another countervailing federal interest in conflict with the application of the Door-Closing Statute here. <u>Id.</u> at 66, n. 11.

The basic jurisdictional facts of Plaintiffs' claims are not unique, and it is not difficult to imagine other non-residents of South Carolina being injured by defective Champion aircraft component products in plane crashes occurring in the other 49 states and beyond.  With Champion able to structure its distribution in such a way as to prevent specific jurisdiction in the fortuitous

place where a plane crashes, *forum non conveniens* foreclosing jurisdiction in Defendant's state of incorporation (Delaware), and the Door-Closing Statute preventing anyone except South Carolina residents from bringing claims against Champion in its South Carolina principal place of business, all other potential non-resident victims are effectively left without a remedy for their deaths and injuries. The discrimination against non-resident plaintiffs inherent in this outcome is not only be deeply disturbing, but anathema to the fundamental purpose of federal diversity jurisdiction.

Constantly transferring cases involving non-South Carolina residents injured by Defendant to less convenient federal forums, like Delaware, would also trigger countervailing federal interests against the application of the Door-Closing Statute. It is an important part of the federal courts' mission to facilitate judicial economy and ensure the "just, speedy, and inexpensive determination of every action and proceeding." Cent. Wesleyan Coll., 143 F.R.D. at 639 n.13 (recognizing as a countervailing federal consideration matters "implicating the federal court system and judicial economy"), aff'd, 6 F.3d 177 (4th Cir. 1993); Fed. R. Civ. P. 1. While Plaintiffs submit herein that a transfer is an appropriate form of alternative relief, this would be a waste of the Court's time rather than simply adjudicating these claims itself in this, the most convenient jurisdiction. Additionally, the Szantay court already recognized that there was nothing preventing other federal courts from transferring cases to South Carolina District Court pursuant to the federal doctrine of *forum non conveniens* and 28 U.S.C. § 1404(a), even though South Carolina law denies non-resident plaintiffs access to its state courts. See Szantay, 349 F.2d at 66 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964)). In this scenario, there would be a frequent need for the South Carolina District Court to then dismiss or re-transfer the case to the Delaware District Court. This constant venue shuffle is totally undesirable and contrary to the

federal interest of efficiently resolving claims on their merits, and it presents yet another countervailing federal interest against the applicable of the Door-Closing Statute.

For all the above reasons, there are ample countervailing federal interests that conflict with and dictate against application of the Door-Closing Statute to bar Plaintiffs' claims. There are more than sufficient grounds to hold that the conflict between federal and state policies must be resolved in favor of the federal interest of providing a convenient forum, indeed likely the only forum, for the adjudication of Plaintiffs' claims. See Szantay, 349 F.2d at 66.

## V. The fact-intensive inquiry of the Motion precludes ruling until fact discovery has taken place

Although the Tuttle Dozer District Court ultimately decided that the Door-Closing Statute was applicable to the plaintiff's claims, it also rejected the defendant's motion for judgment on the pleadings at the outset of the case in favor of reconsidering the motion after the close of discovery.

> [D]etermining whether the door-closing statute precludes some of the causes of action in this case depends on a fact-sensitive analysis. When a contract is involved, the question for purposes of the door-closing statute is whether the contract was made or was to be performed in South Carolina. Moreover, the door-closing statute does not preclude a suit when the 'subject of the action' is located in South Carolina, an issue that similarly requires a factual analysis. In this case, the record thus far contains little or no evidence from which the court can determine whether the door-closing statute precludes one or more of the plaintiff's causes of action. It would not be prudent to decide this issue at such an early stage in the proceedings, but to instead wait until after the parties have an opportunity to engage in discovery and gain a clearer picture of the facts.

Tuttle Dozer Works, Inc. at 551; see also Ocwen Loan Serving, LLC v. Foodman, Hunter, & Karres, PLLC, Case No. 4:13–1118–MGL, 2013 WL 6668097, at *5 (D.S.C. Dec. 18, 2013)(unpublished)(citing *Tuttle Dozer Works, Inc.*). Similarly, here no discovery has taken place between the parties and the "fact-sensitive analysis" required by the instant motion is poorly poised

for resolution. Should the court decline to deny the Defendant's motion on the other grounds set forth, it should deny the motion with leave to refile subsequent to the completion of fact discovery.

**VI.  Even if the Court rejects all of Plaintiffs' arguments, it should transfer this case to an alternative jurisdiction in lieu of dismissal.**

Plaintiffs respectfully submit that transfer is the appropriate alternative remedy if the Court, despite all the arguments set forth above, finds the Door-Closing Statute applies to bar Plaintiffs' claims.  Pursuant to 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses *and in the interest of justice*, a district court may transfer any civil action to any other district . . . where it might have been brought or to any district . . . to which all parties have consented." (emphasis added).  The decision to transfer a case to another venue is "committed to the discretion of the district court[,]" In re Ralston Purina Co., 726 F.2d 1002, 1005 (4th Cir. 1984) (citations omitted), requiring the court to undertake "an individualized, case-by-case consideration of convenience and fairness" and "to weigh in the balance a number of case-specific factors." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (citation omitted). The factors "commonly considered" are:

> (1) the ease of access to the sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the witnesses; (4) the availability of compulsory process; (5) the possibility of a view by the jury; (6) the interest in having local controversies decided at home; and (7) the interests of justice.

Atkins v. Mortara Instrument, Inc., Case no. 2:17-cv-48-DCN, 2017 WL 10754250, at *2 (D.S.C. Sept. 29, 2017) (unpublished).

Defendant readily admits in its moving papers that it would have been amenable to process in Delaware.  Further, Defendant's Motion to Quash in California readily admitted that Delaware was one of the states in which Champion is "at home" for the purpose of personal jurisdiction. Therefore, factor 4 supports a transfer to Delaware.

While the convenience of evidence and witness factors (1, 2, 3, and 6 above)[13] may favor South Carolina, the interests of justice greatly outweigh the other convenience factors and support transfer. The interests of justice are implicated when the case was filed in the "wrong court for very understandable reasons and filing the petition in the appropriate court would now likely be time-barred." Mokarram v. U.S. Atty. Gen., 316 Fed. Appx. 949, 952 (11th Cir. 2009); see also Wright & Miller, Fed. Prac. & Proc., § 3854, n. 2, Standard in Considering Transfer – Interest of Justice (4th Ed. 2020); Internatio-Rotterdam, Inc. v. Thomsen, 218 F.2d 514, 516 (4th Cir. 1955) ("We think, also, that the transfer falls within the letter and spirit of 28 U.S.C. § 1404(a) as being a transfer 'for the convenience of parties and witnesses, in the interest of justice.' . . . We think that the power is no less . . . , when failure to make the transfer may result in not only inconvenience but also in denial of justice to one of the parties."). This action was filed in this judicial district for the understandable reasons that this is where Defendant conducts all its business, including the design and manufacture of the subject products, where Defendant previously stated all witnesses and documents were located, and where the claims in this action arose. Plaintiffs would now be time-barred from re-filing in Delaware, as Defendant is all too pleased to point out in their moving papers, and therefore the interests of justice overwhelmingly support transfer of this action to the United States District Court for the District of Delaware.

Defendant cannot reasonably oppose such an alternative transfer. Either Delaware is so lacking in convenience that it cannot serve as a transfer forum for these claims, in which case

---

[13] Factor 5, "the availability of view by the jury," is typically neutral, except in cases involving uniquely relevant and immovable real property. See, e.g., Ocwen Loan Serving, LLC v. Foodman, Hunter, & Karres, PLLC, Case No. 4:13-1118-MGL, 2013 WL 6668097, at *7 (D.S.C. 2013)(unpublished). The relevant physical evidence of the aircraft component parts and wreckage can be transported to any venue for a jury to view, or photographs and other alternative evidence used instead, and therefore, this factor does not favor either venue.

Plaintiffs arguments above in Section IV are correct and the Door-Closing Statute should not be applied, or Delaware presents sufficient convenience for the interests of justice factor to clearly compel that a transfer to Delaware under § 1404(a) is appropriate. See Hencely, 475 F. Supp. 3d at 468 (holding defendant's refusal to consent to transfer relevant and telling when analyzing availability of alternative forum, and countervailing federal interests against application of Door-Closing Statute). Any other outcomes would be allowing the Defendant to effectively foreclose any remedy at all, and prevent Plaintiffs from seeking redress against Champion in any forum, ever.

Transfer to another district court has been used to solve Door-Closing Statute issues in the past, including in the cases cited by Defendant. For instance, in Grimsley v. United Engineers and Constructors, Inc., 818 F. Supp. 147 (D.S.C. 1993), the court found the Door-Closing Statute applied and South Carolina federal court was closed to the plaintiff. Id. at 148. Nonetheless, the court transferred the case to a venue where the defendant was subject to general personal jurisdiction and where the claims would have been timely when originally filed in South Carolina. Id. at 149.[14] The result should be the same here. In the alternative, Plaintiffs' claims should be transferred to the District of Delaware, the place of Defendant's incorporation where it admits it is "at home" and subject to general jurisdiction, and where this action would have been timely filed

---

[14] While the Grimsley court rejected transfer under § 1404(a), that was only because that case was decided before the South Carolina Supreme Court's Farmer decision, when the Door-Closing Statute was still understood to deprive courts of subject matter jurisdiction. See 818 F. Supp. at 148. Since § 1404(a) does not apply when a court lacks jurisdiction, the Grimsley court instead relied upon 28 U.S.C. § 1631 to transfer the case. Now, in light of the Farmer decision reinterpreting the Door-Closing Statute and clarifying that it does not impact subject matter jurisdiction, see 53 S.C. 553, 579 S.E.2d 325, § 1404(a) is the applicable transfer provision. Plaintiffs submit, however, that the analysis and result does not change since both § 1631 and § 1404(a) take into account the interests of justice and it was on this basis that the Grimsley court ruled transfer appropriate. See 818 F. Supp. at 149.

notwithstanding any two-year statute of limitation by virtue of the tolling agreement entered into by the parties. (**Exhibit C**—Tolling Agreement). Just as in <u>Grimsley</u>, the interests of justice compel such a transfer. <u>See</u> 818 F. Supp. at 149.

For these reasons, Plaintiffs respectfully submit that, in the alternative if the Court rejects Plaintiffs' arguments above and holds the Door-Closing Statute applies to bar capacity for Plaintiffs' claims, then the case should be transferred to the United States District Court for the District of Delaware.

**CONCLUSION**

For the reasons set forth herein, the Defendant's motion should be denied. Plaintiffs respectfully request oral argument on this motion is the Court is so inclined.

Respectfully submitted,


/s/ Graham L. Newman
Mark D. Chappell (Fed ID No. 106)
Graham L. Newman (Fed ID No. 9746)
James D. George (Fed ID No. 13018)
CHAPPELL, SMITH & ARDEN, P.A.
2801 Devine Street, Suite 300
Columbia, South Carolina 29205
(803) 929-3600
(803) 929-3604 (facsimile)
mchappell@csa-law.com
gnewman@csa-law.com
jgeorge@csa-law.com

NELSON & FRAENKEL LLP
Stuart R. Fraenkel (pending pro hac vice)
Nicole C. Andersen (pending pro hac vice)
601 S. Figueroa St., Suite 2050
Los Angeles, CA 90017
(844) 622-6469
(213) 622-6019 (facsimile)
stuart@nflawfirm.com

KREINDLER & KREINDLER LLP
Justin Green (pending pro hac vice)
Vincent Lesch (pending pro hac vice)
750 Third Ave., 32nd Floor
New York, NY 10017
(212) 687-8181
(212) 972-9432 (facsimile)
jgreen@kreindler.com
vlesch@kreindler.com

PANISH SHEA & BOYLE LLP
Kevin R. Boyle (pending pro hac vice)
Nathan Werksman (pending pro hac vice)
1111 Santa Monica Boulevard, Suite 700
Los Angeles, CA 90025
(310) 477-1700
(310) 477-1699
boyle@psblaw.com
werksman@psblaw.com